IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARTHA TRUJILLO,

    Plaintiff,

v.                                                                                        No.

SYNCHRONY BANK,

    Defendant.

## COMPLAINT FOR DAMAGES AND JURY DEMAND

1. Plaintiff brings claims against Defendant for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, and for tortious debt collection, breach of contract, breach of the covenant of good faith and fair dealing, and conversion.

### Parties

2. Plaintiff Martha Trujillo is a natural person residing in Albuquerque, New Mexico.

3. Mrs. Trujillo is a "person" as defined by the TILA, 15 U.S.C. § 1602(e).

4. Defendant Synchrony Bank ("Synchrony"), is a Connecticut bank that issues credit cards.

5. Synchrony is a "creditor" as defined by 15 U.S.C. § 1602(g).

6. The conduct set forth in this Complaint occurred in the regular course of the trade or commerce of Synchrony.

### Jurisdiction and Venue

7. This Court has jurisdiction under the TILA, 15 U.S.C. § 1640(e), and under 28 U.S.C. §§ 1331 and 1337. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this Complaint occurred within the district.

**Facts**

9. Martha Trujillo lives in Albuquerque with her husband Chris and their youngest child.

10. Mr. and Mrs. Trujillo work hard to pay the bills and maintain their credit.

11. In 2021, Mr. and Mrs. Trujillo purchased a mattress from Ashley.

12. They financed the purchase by opening a credit card with Synchrony in Mrs. Trujillo's name.

13. The Synchrony credit card was a "credit card" as defined by 15 U.S.C. § 1602(l).

14. Synchrony was the "card issuer" as defined by 15 U.S.C. § 1602(o).

15. Mrs. Trujillo was the "cardholder" as defined by 15 U.S.C. § 1602(n).

16. Mrs. Trujillo opened the Synchrony credit card account for personal, family, or household purposes.

17. Synchrony and Mrs. Trujillo entered into a cardholder agreement. This contract is in the possession of Synchrony.

18. Upon information and belief, the contract stated that Mrs. Trujillo would only be liable for transactions made by her, an authorized user, or other people permitted by her or an authorized user to make a transaction.

19. When Mr. and Mrs. Trujillo started receiving bills from Synchrony, they provided their Wells Fargo bank account information to Synchrony to allow direct withdrawals.

20. Every month, Mr. and Mrs. Trujillo paid Synchrony $150, a little more than the required payment.

21. On July 18, 2022, Mr. Trujillo accidentally hit "pay in full" when he was attempting to make his monthly payment.

22. Synchrony withdrew $5,193.62 from Mr. and Mrs. Trujillo's bank account.

23. This was nearly all of the money in Mr. and Mrs. Trujillo's account.

24. Mr. Trujillo contacted Synchrony.

25. Synchrony informed Mr. Trujillo that it could not reverse the payment, but Wells Fargo could do so. Synchrony advised that Mr. Trujillo should reverse the payment and continue with the normal monthly payments.

26. Mr. Trujillo contacted Wells Fargo and reversed the payment.

27. The day after the mistaken transfer, $5,193.62 was credited back into Mr. and Mrs. Trujillo's account.

28. Synchrony's statements reflected the payment and the reversal of the payment.

29. Mr. and Mrs. Trujillo resumed their normal monthly payments.

30. Inexplicably, months later, on October 10, 2022, Synchrony charged another $5,193.62 to the Synchrony account.

31. Mrs. Trujillo did not authorize the $5,193.62 charge on her Synchrony credit card.

32. The charge was made by a person who did not have actual, implied, or apparent authority to use her credit card.

33. Mrs. Trujillo received no benefit from the $5,193.62 charge.

34. In short, the $5,193.62 charge was an "unauthorized use" as defined by 15 U.S.C. § 1602(p).

35. As a result of the charge, the balance on the Synchrony credit card doubled and the monthly minimum payments went up to nearly $400.

36. Mr. and Mrs. Trujillo immediately called Synchrony and alerted it to the unauthorized use.

37. In the call, Mr. and Mrs. Trujillo informed Synchrony about the unauthorized use. Mr. and Mrs. Trujillo disputed its validity and asked Synchrony to investigate it.

38. The TILA provides that "a cardholder incurs no liability from the unauthorized use of a credit card", which a few enumerated exceptions. 15 U.S.C. § 1643(d).

39. Even if the exceptions are met, the maximum liability is $50. 15 U.S.C. § 1643(c).

40. Once a card issuer is notified of an unauthorized charge, it is required to follow specified resolution procedures. 12 C.F.R. § 1026.13(a)(1).

41. The notice need not be in writing. 12 C.F.R. § 1026.12(b)(3) (official interpretations).

42. The procedures triggered by notice include the requirement to conduct a reasonable investigation. 12 C.F.R. § 1026(c).

43. Unless a reasonable investigation demonstrates that the charge is legitimate, the consumer bears, at most, a $50 liability for any unauthorized charge. 12 C.F.R. § 1026(d)(1).

44. The card issuer is also barred from making adverse credit reports. 12 C.F.R. § 1026(d)(2).

45. Synchrony agreed to investigate Mr. and Mrs. Trujillo's dispute.

46. However, no reasonable investigation took place.

47. Despite the fact that it is manifestly obvious that the $5,193.62 was not authorized, after several months Synchrony contacted Mr. and Mrs. Trujillo to alert them that the charge was found valid after an investigation.

48. In disbelief, Mr. and Mrs. Trujillo continued contacting Synchrony to dispute the charge.

49. Synchrony refused to correct the unauthorized use of Mr. and Mrs. Trujillo's credit card.

50. Mr. and Mrs. Trujillo were unwilling to pay the new minimum charge, based largely on an unauthorized use of their credit card.

51. They continued to make their customary $150 payment.

52. Synchrony continued sending billing statements asserting its entitlement to collect the unauthorized charge.

53. Synchrony began imposing late fees and interest. Ms. Trujillo's payments were applied to the illegitimate late fees, interest, and unauthorized charge.

54. Synchrony reported derogatory information to Mrs. Trujillo's credit reports, including Equifax, Experian, and Trans Union, harming Mrs. Trujillo's credit reputation.

55. The false information was published to third parties who obtained Mrs. Trujillo's credit reports.

56. Mrs. Trujillo's credit score dropped.

57. The limits on some of her credit cards was reduced, and one credit card was closed.

58. Ms. Trujillo faces irreparable injury should Synchrony continue pursuing her for the debt, harassing her, threatening her finances, and harming her credit.

59. This injury includes the potential denial of credit, housing, and employment opportunities.

60. Ms. Trujillo was damaged by Defendant's misconduct.

61. Synchrony took wrongful possession of Ms. Trujillo's money, applied it to an unauthorized charge, and failed to apply it to her legitimate balance.

62. As a result of the false information on her credit report, Mrs. Trujillo's credit reputation was injured.

63. Mrs. Trujillo lost credit opportunities as a result of Defendant's conduct.

64. Mrs. Trujillo lost time and incurred various out of pocket expenses.

65. Defendant's conduct caused aggravation, frustration, humiliation, and other emotional distress to Mrs. Trujillo, resulting in physical and emotional symptoms.

66. Synchrony's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

67. Upon information and belief, Defendant's actions are part of a pattern of similar misconduct, justifying an award of punitive damages.

### Jury Demand

68. Plaintiff hereby demands trial by a six-person jury on all issues so triable.

### First Claim for Relief: Violations of the TILA

69. Defendant violated the TILA by imposing liability for unauthorized charges, failing to conduct a reasonable investigation, and as otherwise described above.

70. Plaintiff is entitled to actual damages plus statutory damages. 15 U.S.C. § 1640.

71. Plaintiff is entitled to attorneys' fees and costs.

### Second Claim for Relief: Violations of the Unfair Practices Act

72. The foregoing transactions occurred in the regular course of Defendant's trade or commerce, and its actions are subject to the New Mexico Unfair Practices Act ("UPA").

73. The foregoing actions of Defendant constitute unfair or deceptive trade practices within the meaning of the UPA, NMSA §57-12-2(d).

74. Defendant's conduct also constitutes an unconscionable trade practice within the meaning of the UPA, NMSA §57-12-2(e).

75. Defendant willfully engaged in these unlawful trade practices.

76. As a result of Defendant's violations of the UPA, Plaintiff is entitled to recover actual or statutory damages, trebled, plus costs and reasonable attorney's fees.

77. Plaintiff is also entitled to an injunction barring Defendant from continuing to collect on the alleged debt, including making derogatory reports to her credit, and barring Defendant from engaging in further unlawful debt collection activities.

### Third Claim for Relief: Breach of Contract

78. Defendant's actions constitute a breach of its contract with Plaintiff.

79. Defendant's breach of contract damaged Plaintiff.

80. Defendant's breach of contract was malicious, fraudulent, oppressive, willful, or committed recklessly with a wanton disregard for Mrs. Trujillo's rights, such that punitive damages are appropriate.

81. Plaintiff is entitled to actual damages and punitive damages.

### Fourth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing

82. Defendant's conduct violated the covenant of good faith and fair dealing implicit in all contracts by withholding the benefits of the contract from Mrs. Trujillo and/or by wrongfully and intentionally using the terms of the contract to harm Mrs. Trujillo.

83. Plaintiff was damaged as a result.

84. Defendant's breach of the duty of good faith and fair dealing was malicious, fraudulent, oppressive, willful, or committed recklessly with a wanton disregard for Mrs. Trujillo's rights, such that punitive damages are appropriate.

85. Plaintiff is entitled to actual and punitive damages.

### Fifth Claim for Relief: Tortious Debt Collection

86. Defendant's actions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

87. Plaintiff is entitled to recover actual damages and punitive damages.

### Sixth Claim for Relief: Conversion

88. Defendant's conduct constituted conversion.

89. Plaintiff was damaged as a result.

90. Plaintiff is entitled to actual and punitive damages.

WHEREFORE, Plaintiff prays that this Court:

A. Award actual, statutory, and punitive damages as set forth herein;

B. Provide injunctive relief as set forth herein;

C. Order declaratory relief that Plaintiff does not owe the debt to Synchrony;

D. Award costs and attorney's fees; and

E. Award such other relief as this Court deems just.


Respectfully submitted,

FEFERMAN, WARREN & MATTISON

*/s/ Nicholas H. Mattison*
Nicholas H. Mattison
300 Central Avenue S.W., Suite 2000 West
Albuquerque, N.M. 87102
(505) 243-7773
(505) 243-6663 fax
nmattison@nmconsumerwarriors.com
*Counsel for Plaintiff*